JANVIER, Judge.
J. Lawrence Flynn, the defendant, has appealed suspensively from a judgment against him in the sum of $254 in favor of Emory L. Graves, who alleged that he had furnished certain road gravel to Flynn at. his country home near Slidell, Louisiana, and had caused the gravel to be spread in the road .leading to Flynn’s country home, all at the request of Flynn.
Flynn admitted that he had given a conditional order for a small quantity of gravel, provided it could be delivered on the same day on which he placed the order, but he averred that the gravel had not been delivered on that day and that when he next returned to his country place from New Orleans, he saw, for the first time that an enormous quantity of gravel had been placed on his road and had been spread over certain grass areas in such a way as to damage the appearance and usefulness of the road.
After denying liability to plaintiff, Flynn assumed the position of plaintiff in re-convention and prayed for judgment in re-convention against Graves in the sum of $250, on the allegation that that amount would be required to replace the road in the condition in which it was before the gravel was spread on it.
The record shows that during the latter part of November, 1949, while Mr. and Mrs. Flynn were at their country place, Calvin Gousman, a colored employe of Graves, called on Flynn and suggested to him that the private road leading from the public road to Flynn’s home would be improved by the placing thereon of sufficient gravel to fix some of the low spots which appeared in the road. Gousman says *620 that Graves was “sick in the bed, and I was out working, looking for work, and I talked to Mr. Flynn * * * and he gave me permission to work his road * * He then said that he delivered gravel for several days until he had delivered ninety-two yards, and that during the several days on which the gravel was delivered, Flynn went back and forth between his country place and New Orleans, and that he went to his country place every day. He says that Flynn first ■ordered “between six and eight loads, to try it out.”
Flynn says that Gousman called on him and “told me that my road looked like it needed some gravel,” and that it would take approximately two loads. He says that he told Gousman: “All right, if you can bring the two loads here today.” He says that he is certain that that occurred on a Monday morning, because he was accustomed to going to his place over the weekends and was returning -on Monday, and decided to wait for the gravel before leaving. He says that the gravel did not arrive, and that he went to New Orleans and when he next returned the entire amount of gravel, which is now sued for, had been delivered and had been spread over his road and over his grass in such a way as to seriously reduce the usefulness of the road and to ruin the appearance of the place.
Flynn himself did not sign the receipts for any of the gravel, all of which were signed by Augusta Vander, who “was a woman living not far from the house,” who “would come and feed the animals and the yard man.”
Graves, the plaintiff, knew nothing whatever about the negotiations between Flynn and Gousman, but he says that on the completion of the job he “checked it to see that the work was properly done and the gravel was spread * *
It is true that Graves testified that, after the completion of the job, when he had not received payment, he called on Flynn and that Flynn had said: “It seems that I purchased a little more material than I expected * * * ” and that after some conversation he, Graves, left. He says that this conversation had taken place nearly three years before, and that “it’s rather difficult to get it all in, but the outcome was that he agreed that he would send me a check when I left there * *
Mrs. Flynn says that she was present and heard the negotiations between Gous-man and Flynn, and that only two loads were contracted for, Flynn having told Gousman that he would try out two loads and that if they liked the appearance, “perhaps, we would take more.” She says that it was understood that the two loads were to be delivered on that day, which was Monday, and that the gravel was not delivered, and that she and Mr. Flynn returned to New Orleans and that, on their next visit, for the first time they saw that all of the gravel had been delivered and spread.
The testimony of Gousman was not taken before the trial judge. He appeared by agreement in the office of counsel for plaintiff and his testimony was taken there. We are not at all impressed with his testimony and feel that it is substantially overbalanced by that given by Mr. and Mrs. Flynn and by the rather remarkable circumstance that, although according to Gousman, Flynn was present every day on which deliveries were made, he receipted for none of them, all being signed by a woman who lived nearby and who came to his place only intermittently. Furthermore, it is shown that Gousman, between the time at which he made these deliveries for Graves and the time at which he testified, had been dismissed by Graves because of shortages in his accounts. Then, too, it appears that Gous-man’s earnings depended on the amount of business he produced, and he was therefore interested in delivering as much gravel as possible.
The attitude of Gousman during the giving of his testimony does not impress us favorably. When he was asked why he did not obtain the signature of Flynn to any of the receipts, he said: “I don’t know *621 if he was taking a bath or what the heck he was doing. * * * ” At another point in his testimony when he was asked to describe Flynn, he said: “Well, all I can tell you, he looks like a big shot white man; * *
As a result of reading the entire record, we conclude that the evidence of defendant substantially outweighs that of plaintiff. It is true that Flynn did order a certain amount of gravel, but even that order was conditioned on its being delivered on the day on which it was ordered, apparently so that he might see that it was properly- spread and that all of the holes were properly filled. Under the circumstances defendant is not liable for any of the gravel which was delivered.
Defendant, plaintiff in reconvention, made no serious effort to prove the damage sustained by his property. He merely stated that he did not like the looks of the place and that he thought it would probably require about $250 to repair the damage. Of course, the gravel which was delivered by plaintiff belongs to him and could be removed if the removal could be effected without damage to the property.
Insofar as the judgment appealed from dismissed the reconventional demand, the said judgment is affirmed; in all other respects it is annulled, avoided and reversed and plaintiff’s suit is dismissed at his cost.
Amended in part reversed in part.